DAVID A. DIEPENBROCK (SBN 215679)
W. SCOTT CAMERON (SBN 229828)
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:     916.558.6000
Facsimile:     916.446.1611
Email: ddiepenbrock@weintraub.com
          scameron@weinstraub.com

Attorneys for Plaintiff
SIERRA NORTHERN RAILWAY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA NORTHERN RAILWAY,<br><br>       Plaintiff,<br><br>      vs.<br><br>PORT OF WEST SACRAMENTO and RAMCON ENGINEERING & ENVIRONMENTAL CONSULTING, INC., a California corporation,<br><br>       Defendants. | Case No.:<br><br>**DECLARATION OF DAVID A. DIEPENBROCK REGARDING NOTICE TO DEFENDANTS OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Ctrm: |

{4351474.DOCX:}

DIEPENBROCK DEC RE NOTICE TO DEFENDANTS OF EX PARTE APPLICATION FOR TRO

I, David A. Diepenbrock, declare as follows:

1.      I am a shareholder of Weintraub Tobin Chediak Coleman Grodin Law Corporation, counsel of record for Defendant Sierra Northern Railway ("SNR") in the above-referenced matter. Pursuant to Federal Rule of Civil Procedure 65 and Local rule 231(c)(5), I provided notice to Defendants Port of West Sacramento ("Port") and Ramcon Engineering & Environmental Consulting, Inc. ("Ramcon"), collectively, "Defendants" as follows:

2.      On July 4, 2024, I emailed Rick Toft, the General Manager of the Port of West Sacramento and Michael S. Ramos, the C.E.O. of Ramcon Engineering & Environmental Contracting, Inc. ("Ramcon") a cease and desist letter, a true and correct copy of which is attached hereto as **Exhibit A**.  The letter requested a response by no later than 3:00 p.m. on July 5, 2024.  I sent the letter from the airport shortly before boarding a flight to Houston, Texas so I could attend my niece's July 6, 2024 wedding on the Texas coast.

3.      At approximately 3:00 p.m. on July 5, 2024, I received a call from Jeff Mitchell and Amara Harrell, members of the Kronick law firm, who informed me that they represented the Port of West Sacramento.  Among other things, they informed me that Mr. Toft was on vacation, and that he and the Port would need additional time to consider the substance of our July 4, 2024 cease and desist letter.  As a result, the parties agreed to a 48-hour standstill, through close of business on July 9, 2024, to allow the Port additional time to consider SNR's position. A true and correct copy of the email correspondence memorializing that agreement is attached hereto as **Exhibit B**.

4.      On July 6, 2024, I learned that Hurricane Beryl might impact our location. My family, along with other wedding guests, adjusted their travel plans. The flight we booked for Sunday, July 7, 2024 was cancelled as the hurricane approached, so we spent the night in Houston. We were fortunate to safely return to Sacramento, arriving shortly after midnight, on July 9, 2024.

5.      On July 9, 2024, the Port's counsel wrote us, stating that the Port was unwilling to change its position and that SNR would lose use of the North Access, effective July 10, 2024. A true and correct copy of the letter is attached hereto as **Exhibit C**. SNR was forced to bring this lawsuit, seeking a TRO and preliminary injunction, as a result of the Port's intransigence.

1        6.      On the evening of July 10, 2024, I emailed counsel for the Port, and Michael S. Ramos,

2  the C.E.O. of Ramcon, that SNR was applying for a temporary restraining order and order to show

3  cause re preliminary injunction. A true and correct copy of that email providing such notice to

4  Defendants is attached hereto as **Exhibit D**.

5        I declare under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct.  Executed on July 10, 2024, at Sacramento, California.

7

8                             /s/ *David A. Diepenbrock*
                             David A. Diepenbrock

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*weintraub* **tobin** chediak coleman grodin
law corporation

DIEPENBROCK DEC RE NOTICE TO DEFENDANTS OF EX PARTE APPLICATION FOR TRO

# Exhibit A



David A. Diepenbrock
916.558.6026 DIRECT
ddiepenbrock@weintraub.com

July 4, 2024

VIA EMAIL - rickt@cityofwestsacramento.org

Rick Toft
General Manager
Port of West Sacramento
City Manager's Office
1110 West Capitol Avenue, 3rd Floor
West Sacramento, CA 95691

**Re:     Demand to Cease and Desist from Blocking Sierra Northern Railway Access**

Dear Mr. Toft:

We represent Sierra Northern Railway, a common carrier railroad and California public utility ("SNR"), which acquired title to an 18.865-acre parcel of real property ("Subject Property") from the Port of West Sacramento under a Purchase and Sale Agreement, dated February 15, 2012, and the Grant Deed recorded pursuant thereto, on June 1, 2012.

We write today to demand that you immediately direct the Port's tenant of the parcel adjacent to the Subject Property, Ramcon Engineering & Environmental Contracting, Inc. ("Ramcon"), to immediately cease and desist from blocking the Northern Access route SNR has been using to access the Subject Property since 2014. If we do not receive **written assurance** from you **by 3:00 p.m. on July 5, 2024**, confirming that you will direct Ramcon to keep the Northern Access open to SNR and its customers, then SNR will be forced to seek relief in court.

Background Facts

SNR is a federally certified common carrier railroad, operating in connection with other common carriers that originate the line haul interstate freight rail service. SNR's main railroad facilities were originally located in Woodland, California. However, the Sacramento Area Flood Control Agency ("SAFCA") acquired a portion of SNR's Woodland branch line—under threat of eminent domain—for a direly needed regional flood control project, which severed SNR's main facilities from most of its railroad network. SNR was thus forced to find new property for its facilities. The Subject Property is one of those replacement facilities.

As you are well aware, SNR improved the Subject Property to include a locomotive repair facility, a track repair operation, and rail lines to move interstate commerce by rail. The hard costs SNR incurred to construct and install those improvements approach $2,000,000. SNR located those improvements relying on the Port having granted SNR free and unrestricted use

{4347752.DOCX:2}

weintraub tobin chediak coleman grodin law corporation
400 Capitol Mall, 11th Floor, Sacramento, CA 95814 | (916) 558.6000 | F (916) 446.1611 | www.weintraub.com

Rick Toft
July 4, 2024
Page 2

of the Northern Access.

For over four (4) years, SNR, its employees and customers have used the Northern Access to access the Subject Property on a daily basis.  SNR employees who have used the Northern Access include mechanics who repair and maintain rail cars used to transport interstate commerce. Customers have used the Northern Access to access their rail cars, and to retrieve goods shipped by interstate rail to the Subject Property. On average, 10-20 trucks enter and leave the Subject Property daily, carrying goods delivered by interstate rail to the Subject Property, using only the Northern Access.

After SNR had installed all of the current improvements on the Subject Property, you and Ramcon referred Flatiron to SNR. As you know, Flatiron initially approached the Port about leasing Port property for use as an aggregate processing facility and concrete batch plant. The Port was unable and/or unwilling to lease its property to Flatiron, and so referred Flatiron to SNR. As a consequence of that referral, and in reliance on the existence of the Northern Access, SNR entered into a lease agreement with Flatiron that conferred to Flatiron an exclusive use and occupancy of the southern portion of the Subject Property. As a consequence of that lease, SNR's only means of accessing its rail yard on the Subject Property, is by using the Northern Access. In addition to the lease granting Flatiron exclusive possession of its leased premises, the aggregate processing facility and concrete batch plant Flatiron has constructed on its leased premises also provide a physical barrier to SNR using the Southern Access to access its rail yard.

After SNR had entered into the lease with Flatiron, and with full knowledge that the lease and Flatiron's improvements precluded SNR from using the Southern Access, you recently informed SNR that the Port would no longer allow SNR or its customers to use the Northern Access. You stated (falsely) that using the Southern Access was supposedly "the best path forward" with full knowledge that accessing SNR's rail yard from the Southern Access is infeasible.  For the reasons stated below, terminating the Northern Access is unlawful.

<u>Legal Discussion</u>

Congress enacted the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 et seq., to ensure that the nation's railroads were regulated uniformly. *Coast Scenic R.R., LLC v. Or. Dep't of State Lands*, 841 F.3d 1069, 1072 (9th Cir. 2016). Through the ICCTA, Congress established the Surface Transportation Board ("STB"), and conferred upon it exclusive jurisdiction over railroad transportation. 49 U.S.C. § 10501(b). To come within the STB's exclusive jurisdiction, an activity must constitute "transportation." But "transportation" has been broadly defined under the ICCTA to include "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail," and "services related to that movement, including receipt, delivery," "transfer in transit," "storage," and "handling of property."  49 U.S.C. 10102(9). Cases consistently hold that any actions by state or local

{4347752.DOCX:2}

Rick Toft
July 4, 2024
Page 3

government agencies that effectively control transportation by rail are categorically preempted by the ICCTA.

Courts have repeatedly agreed that all aspects of unloading commodities from rail cars, temporary storage of the commodities, and transfer of product to trucks, together commonly referred to as "transloading," are part of rail transportation under the STB's exclusive jurisdiction and subject to ICCTA preemption. *See, e.g., Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 530 (5th Cir. 2012) (transloading of hydraulic fracking sand, including offloading sand from rail cars, to silos and loading onto trucks); *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 154, 158 (4th Cir. 2010) (transloading of ethanol from rail cars to trucks); *Green Mt. R.R. Corp. v. Vermont*, 404 F.3d 638, 640, 645 (2d Cir. 2005) (transloading and temporary storage of bulk salt and cement from rail cars to trucks). Simply put, the reach of preemption extends to the yard, property, facilities and any intermodal equipment used in connection with a railroad or related to the movement of passengers or property. *See, e.g., Soo Line Railroad Company v. City of Minneapolis* (D. Minn. 1998) 38 F.Supp.2d 1096, 1099.

As detailed above, any action by the Port and/or Ramcon to block or impede SNR's use of the Northern Access interferes with transportation by rail, and is therefore pre-empted and prohibited by ICCTA. Unless the Port and Ramcon immediately stipulate to permanently refrain from blocking SNR's use of the Northern Access, SNR will seek a court order obtaining such relief on a preliminary basis. Moreover, we believe that SNR would have the right to acquire title to the land underlying the Northern Access by exercising its eminent domain powers, if a satisfactory agreement cannot be reached on a voluntary basis.

<u>Conclusion</u>

Again, if we do not receive written assurance from you by 3:00 p.m. on July 5, 2024, confirming that you will direct Ramcon to keep the Northern Access open and accessible to SNR and its customers, then SNR will promptly seek relief in court.

Very truly yours,

**weintraub|tobin**

*David Diepenbrock*

David A. Diepenbrock

DD/sh

Enclosure

cc:      Michael S. Ramos - Mick@ramcon.com

{4347752.DOCX:2}

# Exhibit B

**Serena Y. Heller**

| | |
|---|---|
| **From:** | Mitchell, Jeffrey A. <jmitchell@kmtg.com> |
| **Sent:** | Friday, July 5, 2024 5:23 PM |
| **To:** | David A. Diepenbrock |
| **Cc:** | Harrell, Amara; Rick Toft |
| **Subject:** | [EXTERNAL] Re: Port of West Sacramento -  Sierra Northern |

Thanks David.  We'll be in touch next week.  Have a great weekend.

  **Jeffrey Mitchell** | Shareholder
Kronick Moskovitz Tiedemann & Girard | kmtg.com
direct: +1 916 321 4591 | mobile: +1 916 719 4890

CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

---

**From:** David A. Diepenbrock <DDiepenbrock@weintraub.com>
**Sent:** Friday, July 5, 2024 5:05 PM
**To:** Mitchell, Jeffrey A. <jmitchell@kmtg.com>
**Cc:** Harrell, Amara <aharrell@kmtg.com>; Rick Toft <rickt@cityofwestsacramento.org>
**Subject:** Re: Port of West Sacramento - Sierra Northern

Jeff,

Our client accepts your below offer of a 48-hour stand still. We appreciate the gesture of good will.

Regards,
David

Get Outlook for iOS

---

**From:** Mitchell, Jeffrey A. <jmitchell@kmtg.com>
**Sent:** Friday, July 5, 2024 5:48 PM
**To:** ddiepenbrock@weintraub.com <ddiepenbrock@weintraub.com>
**Cc:** Harrell, Amara <aharrell@kmtg.com>; Rick Toft <rickt@cityofwestsacramento.org>
**Subject:** [EXTERNAL] Port of West Sacramento - Sierra Northern

Mr. Diepenbrock -

Amara and I spoke briefly with Mr. Toft, who has confirmed that Ramcon is willing to hold of on any activity Monday or Tuesday that would prevent your client from using the northern access route.  Please confirm that you will delay filing any legal action at least until Wednesday.  If so, we'll talk further with Port officials next week and see if it makes any sense to seek a further delay from Ramcon.

Regards,
Jeff

1

**Jeffrey Mitchell**
*Shareholder*



**Kronick Moskovitz Tiedemann & Girard**
1331 Garden Highway | 2nd Floor | Sacramento, CA 95833

+1 916 321 4500 | T
+1 916 321 4591 | D
+1 916 719 4890 | M
+1 916 321 4555 | F

**kmtg.com | bio | vCard | map | jmitchell@kmtg.com**

CONFIDENTIALITY: This communication may contain confidential information. If you are not the intended recipient, or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this email in error, and delete the copy you received.

# weintraub|tobin

**weintraub tobin chediak coleman grodin** law corporation

400 Capitol Mall, 11th Floor, Sacramento, California 95814  |  916.558.6000  |  www.weintraub.com

Sacramento  |  Los Angeles  |  Newport Beach  |  San Diego  |  San Francisco

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it.

# Exhibit C



**AMARA HARRELL**
aharrell@kmtg.com

July 9, 2024

<u>**VIA E-MAIL**</u>

David Diepenbrock
Weintraub Tobin
400 Capitol Mall, 11th floor
Sacramento, CA 95814

Re: Sierra Northern Access

Dear Mr. Diepenbrock:

This letter is in follow up to my letter dated July 5, 2024, and the subsequent phone call and resulting exchange of emails between you and Jeff Mitchell on the same date. In that exchange of emails, the Sacramento-Yolo Port District ("Port") and its tenant Ramcon Engineering & Environmental Contracting, Inc. agreed to allow Sierra Northern Railway ("SNR") to access its property through the northern pathway through today, July 9, 2024, and SNR agreed to delay filing any legal action until at least July 10, 2024.

After further consideration, the Port has not changed its position on closing off the northern pathway to the SNR property. Therefore, beginning July 10, 2024, the Port will no longer allow SNR to use the northern pathway through its property. Instead, SNR will be required to use the legal access that the Port provided to SNR which runs along Boathouse Road to the southern portion of the SNR property.

If you would like to provide us with any additional information to support your assertions that SNR has a valid legal right to use the northern path through the Port property, we would be happy to review.

Very truly yours,

KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation

AMARA HARRELL

AH
cc: Rick Toft (rickt@cityofwestsacramento.org)
    Aaron Laurel (aaronl@cityofwestsacramento.org)
    Jeff Mitchell (jmitchell@kmtg.com)
    Michael S. Ramos (Mick@ramcon.com)

1331 Garden Hwy, 2nd Floor | Sacramento, CA 95833    **T.** (916) 321-4500 | **F.** (916) 321-4555    **www.kmtg.com**

2544534.2 11751.023

**Exhibit D**

## Serena Y. Heller

| | |
|---|---|
| **From:** | David A. Diepenbrock |
| **Sent:** | Wednesday, July 10, 2024 9:45 PM |
| **To:** | Harrell, Amara; Mitchell, Jeffrey A.; rickt@cityofwestsacramento.org; Laurel, Aaron; Mick@ramcon.com |
| **Cc:** | Serena Y. Heller; 'Scott, LeeAnn'; Scott Cameron; Kavan J. Jeppson; David A. Diepenbrock |
| **Subject:** | Sierra Northern Access to West Sacramento Rail Yard: Notice of Application for TRO |
| | |
| **Importance:** | High |

Good evening,

Please take notice that Sierra Northern Railway ("SNR") is applying to the U.S. District Court for the Eastern District of California for a temporary retaining order ("TRO") and order to show cause re preliminary injunction ("OSC"), to enjoin and restrain the Port of West Sacramento and Ramcon Engineering & Environmental Consulting, Inc., and all those acting in concert with each or both of them, from preventing or impeding SNR from using an established route SNR has used for many years to access its West Sacramento rail yard, which route is the only means by which SNR, its employees, and its customers, can reach its West Sacramento rail yard.

SNR is seeking to have the Application heard as soon as possible. Once a specific time and location has been set by the Court, SNR will promptly give additional notice of the time and location of the hearing to the parties to this email.

The ex parte application for TRO and OSC is brought under Local Rule 231 to enforce SNR's rights under: the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 et seq., which Congress enacted to ensure that the nation's railroads were regulated uniformly, and without interference by state or local governments; 42 U.S.C. § 1983; and, applicable decisional law of the United States and of the State of California.

Regards,
David

**David Diepenbrock**
Attorney at Law

**Direct:** 916.558.6026
**Cell:** 916.838.5858
**Email:** DDiepenbrock@weintraub.com

# weintraub | tobin
**weintraub tobin chediak coleman grodin** law corporation

400 Capitol Mall, 11th Floor, Sacramento, California 95814 | 916.558.6000 | www.weintraub.com
Sacramento | Los Angeles | Newport Beach | San Diego | San Francisco

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it.