UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA NORTHERN RAILWAY, | No. 2:24-cv-01899-DJC-JDP |
| Plaintiff, | |
| v. | ORDER |
| PORT OF WEST SACRAMENTO and RAMCON ENGINEERING & ENVIRONMENTAL CONSULTING, INC., | |
| Defendants. | |

Plaintiff Sierra Northern Railway filed an ex parte application requesting a temporary restraining order to restore Plaintiff's movement through Defendants' property following the alleged revocation of Plaintiff's license to utilize an access route. Following a hearing on the matter, the Court granted the application and issued the Temporary Restraining Order on July 12, 2024. The Court issues this Order to provide the Parties with the Court's reasoning for issuing the Temporary Restraining Order.

**I.  Background**

Plaintiff Sierra Northern Railway, a common carrier railroad, brings the present suit against the Port of West Sacramento ("the Port"), a governmental independent

1

special district, and the Port's tenant, Ramcon Engineering & Environmental Consulting, Inc. ("Ramcon") (collectively "Defendants") over Defendants' decision to revoke Plaintiff's license to access its property via a route through the property leased by Ramcon. (Compl. (ECF No 1) ¶¶ 3-5.) Plaintiff operates a railway transload service in West Sacramento where it stores and transfers freight between railroads and other means of transportation. (*Id.* ¶ 12.) In order to effect this transportation, Plaintiff has historically used an access route located on the Port's property. (*Id.* ¶¶ 16-17.)

Plaintiff alleges that it acquired a parcel of land from the Port in 2012 where it houses its rail facilities. (*Id.* ¶ 13.) While the parcel included an access route on the southern portion of the property, the Port, through its General Manager Rick Toft, granted Plaintiff access to the property via the contested North Access route. (*Id.* ¶ 1.) In reliance on the license to utilize the North Access route, Plaintiff improved the land and built its rail facilities at the northern portion of its property, expending nearly $2,000,000. (*Id.* ¶ 16.) After constructing these facilities in reliance on the use of the North Access, in 2023 Plaintiff leased a parcel of land at the southern portion of its property to a construction company. (*Id.* ¶ 18.) The construction company erected a concrete batch plant at the southern end of the property which creates a physical barrier to accessing the property via the South Access route. Accordingly, Plaintiff alleges, it cannot access its rail facilitates or carry out its services, except through the North Access route. (*Id.* ¶ 21.)

In May 2024, Defendants purported to revoke Plaintiff's license to use the North Access route, which became effective on July 10, 2024. (Ex Parte Appl. for TRO ("TRO App") (ECF No. 2) at 10 –11.) Without use of the North Access route, Plaintiff claims that it is unable to access its rail facilities and alleges that the lack of access will cause Plaintiff to substantially cease its shipping activities. (*Id.* at 17.) Plaintiff has filed the present suit requesting a declaratory judgement that Defendants' actions are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§10101 *et seq.*, seeking to quiet title to the route and equitably estop

2

Defendants from revoking the license, and asserting violation of section 1983, 42 U.S.C. § 1983, against the Port for unlawful taking in violation of the Fifth and Fourteenth Amendments. Plaintiff subsequently filed the instant Ex Parte Application for a Temporary Restraining Order to restore Plaintiff's movement through the North Access route, (ECF No. 2). The Court held a hearing on July 12, 2024, with David Diepenbrock appearing for Plaintiff and Lauren Jones and Jeff Mitchell appearing for the Port. Defendant Ramcon did not appear, but counsel for Plaintiff represented to the Court that it had provided notice of the hearing to an agent of Ramcon via email. At the conclusion of the hearing, the Court granted the Application for a Temporary Restraining Order. (ECF No. 11.) The court issues this order to provide its reasoning to the Parties.

## II. Legal Standard for Temporary Restraining Order

The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). In determining whether to issue a temporary restraining order, a court relies on the factors that guide the evaluation of a request for preliminary injunctive relief: whether the moving party "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in [its] favor, and . . . an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l. Sales Co. v. John D. Brush* & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). Alternatively, courts within the Ninth Circuit may consider a request for a temporary restraining order using a "sliding scale" test in which "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, a stronger showing of irreparable harm might offset a lesser showing of likely success on the merits. *Id.*

When deciding whether to issue a temporary restraining order, the court may rely on declarations, affidavits, and exhibits, among other things, and this evidence need not conform to the standards that apply at summary judgment or trial. See *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); see also *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.").

### III. Discussion

On this record, Plaintiff has established that it is entitled to a temporary restraining order. Plaintiff raises substantial questions about its likelihood to succeed on the merits at least with respect to its section 1983 claim. In addition, Plaintiff has established irreparable injury, and that the balance of hardships and the public interest favor a temporary restraining order. Pursuant to the "sliding scale" test under *Alliance for the Wild Rockies*, a temporary restraining order is therefore appropriate. 632 F.3d at 1131.

#### A. Likelihood of Success on the Merits

To establish a 1983 cause of action against a municipality, the Plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) because "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Liability under *Monell* may be premised on the decision of a

decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014).

Plaintiff has asserted that it has a property right in the form of an irrevocable license granted by the Port, and that the Port's revocation of that license constitutes an unlawful taking under the Fifth Amendment. Under California law, "[a]n otherwise revocable license becomes irrevocable when the licensee, acting in reasonable reliance either on the licensor's representations or on the terms of the license, makes substantial expenditures of money or labor in the execution of the license." *Gamerberg v. 3000 E. 11th St.*, LLC, 44 Cal. App. 5th 424, 430 (2020) (quoting *Richardson v. Franc*, 233 Cal. App. 4th 744, 757–58 (2015)); *see, e.g. Cooke v. Ramponi*, 38 Cal. 2d 282, 287 (1952) (plaintiff established irrevocable license to use a roadway where they built a home and improved the roadway in reliance on the license); *Higgins v. Kadjevich*, 186 Cal. App. 2d 520, 521 (1960) (plaintiff established irrevocable license to use a pipeline where plaintiff built an extension of the pipeline running to the well on plaintiff's property in reliance on the license to use the main pipeline). An irrevocable license to enter and use land is the functional equivalent of an easement, *see Gramerberg*, 44 Cal. App. 5th at 433, and an easement is an interest in real property, *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999).

Plaintiff relied on the Port's grant of a license to use the North Access route by making improvements to their land, including constructing the rail facilities, costing nearly $2,000,000. Plaintiff openly erected the structures and used the route on a daily basis. Accordingly, Plaintiff has established a likelihood of proving it has a property right in the form of an irrevocable license to use the North Access route. The Port's revocation of Plaintiff's license, i.e. its property interest, is therefore likely to constitute an unlawful taking by the Port which deprives Plaintiff of this property right in violation of the Fifth and Fourteenth Amendments. *See Cedar Point Nursery v.*

*Hassid*, 594 U.S. 139, 147 (2021) (discussing the various ways in which a government may effect a taking under the Fifth Amendment).

Next, because the General Manager is likely the "final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision," the General Manager's decision to revoke the license may be fairly considered a policy of the Port.  While not every decision by a policy making official may be imputed to the municipality, liability will attach where the decision "is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986).  The General Manager made the initial decision to grant a license, which strongly suggests that he is the final authority for decisions regarding the granting or revocation of such licenses such that the Port may be held responsible for the revocation of the license .  In any event, there is at least a substantial question as to whether the revocation was the policy of the Port.  Because the General Manager's decision and the policy are likely one in the same, the policy was the "moving force" behind the alleged constitutional violation.

Finally, the Port's actions in revoking Plaintiff's property right without process or compensation is deliberately indifferent to Plaintiff's rights under the Fifth and Fourteenth Amendments.  The failure to compensate for a Fifth Amendment taking is the "deprivation of a right secured by the Constitution" under section 1983, regardless of any subsequent remedy.  *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 189 (2019) (internal quotation omitted).  Accordingly, Plaintiff has established a likelihood of success on the merits, if not at least raised a serious question about Defendant's liability.

**B.  Irreparable Harm**

While Defendant presented evidence at the hearing which may ultimately undermine whether the harm to Plaintiff is irreparable, Plaintiff's allegations and attached declarations establish that Plaintiff has substantially ceased activity because it

cannot use the Northern Access route, which satisfies the requirement for an irreparable injury. Defendant presented a witness who testified that Plaintiff is able to access its rail facilities through the Southern Access route based on witnessing at least one of Plaintiff's vehicles driving though the Southern Access. While this shows that access may not be physically impossible, it is not inconsistent with Plaintiff's allegations that its operations have substantially ceased. Plaintiff has alleged that it ordinarily hauls between ten and twenty truckloads per day, so a single truck would be a substantial reduction. Further, "[i]t is well-established that the loss of an interest in real property constitutes an irreparable injury. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011). Imposition of the temporary restraining order will alleviate this harm while the Court is given a chance to fully assess the merits of Plaintiff's claims.

### C. Balance of Equities

In contrast to the harm Plaintiff will suffer, the Port did not establish more than an inconvenience to Defendants. Plaintiff has been using the access route for many years without any objection from Defendants, evincing that Defendants are not harmed by Plaintiff's use of the route. The only potential harm to Defendants is that Defendant Ramcon plans to construct on that portion of the property. However, as communicated by counsel for the Port during the hearing, Ramcon has not started construction. If anything, Defendant Ramcon may be delayed by a few weeks under the restraining order. The balance of this hardship with Plaintiff's favors instituting the restraining order.

### D. Public Interest

Plaintiff is a common carrier which ships supplies for various companies, including for other common carriers. If Plaintiff has to substantially cease it shipping activities Plaintiff's customers will be harmed, and the interruption in services may cause other supply stream issues which will affect a broader swath of the public.

////

Accordingly, the public interest favors maintaining the status quo so that Plaintiff can continue its shipping activities.

* * * *

Taking the factors as a whole, pursuant to the "sliding scale" test, the factors weigh in favor of issuing the Temporary Restraining Order.[1]

## IV. Conclusion

As previously ordered, the Court GRANTS Plaintiff's Application for a Temporary Restraining Order, ECF No. 2.  See ECF No. 11 for further instructions.

IT IS SO ORDERED.

Dated:  **July 15, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – 24cv01899.TRO

---

[1] The Court issued the restraining order against both the Port and its tenant, Ramcon.  Based on the evidence before the Court, Ramcon appears to have been in active concert or participation with the Port under Federal Rule of Civil Procedure 65(d)(2).  Evidence in the record suggests that the Port exercises control over Ramcon's blockage of the access route as the Port had previously ordered Ramcon to delay blocking the access route for 48 hours.  (*See* TRO App., Ex. B.)

8